**Harriet MILLER, Plaintiff,**

v.

**Leonard DAVIS et al., Defendants.**

**Civ. A. No. 78–0931.**

United States District Court,
District of Columbia.

Nov. 18, 1978.

Philip J. Hirschkop, Alexandria, Va., for plaintiff.

Sidney S. Rosdeitcher, New York City, admitted pro hac vice, for defendants Davis and Colonial Penn Group, Inc.

Jack Lahr, Washington, D. C., for defendants Singer, Miller, Brickfield and NRTA and AARP.

## MEMORANDUM

GASCH, District Judge.

Harriet Miller, former Executive Director of the American Association of Retired Persons (AARP) and the National Retired Teachers' Association (NRTA), brought this action against several individuals affiliated with the organizations for wrongful removal from that position. Plaintiff Miller, a resident of the District of Columbia, sued in the Superior Court of the District of Columbia, claiming tortious interference with her contractual relationships, defamation, and intentional infliction of emotional distress. Shortly after the action was filed, defendants removed the matter to this Court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1441 (1970). Before the Court is plaintiff's motion to amend her original complaint, adding AARP and NRTA as parties defendant, and adding a claim against them for wrongful refusal of access to Association books and records. The addition of AARP and NRTA, which are District of Columbia nonprofit corporations, would destroy federal diversity jurisdiction over this action. Consequently, plaintiff has also

moved to remand this case to the Superior Court.

AARP and NRTA are national organizations created to serve the interests of senior citizens. Plaintiff Miller was appointed Executive Director of AARP and NRTA in February, 1976. She alleges that while she was Executive Director, she gradually became aware of a scheme by which the individual defendants were controlling the Associations for their own profit and as a part of their business empire. Plaintiff alleges that her efforts to expose the relationship and to make AARP and NRTA independent of the individual defendants led to her dismissal in October, 1977. Plaintiff alleges that defendant Leonard Davis personally and through the other defendants concealed the true nature of the Associations from her; that they constantly attempted to exert control over the Associations and interfere with plaintiff's carrying out of her responsibilities; and that they defamed plaintiff and caused her removal from her position when Davis became alarmed at her refusal to take part in the alleged scheme.

Defendant Leonard Davis was involved in creating a group health insurance plan for NRTA members in the mid-1950's. The results were successful, and subsequently Davis helped to organize AARP to extend group health insurance benefits to more people. Davis also took part in forming defendant Colonial Penn Group, Inc. (CPG), parent corporation for an insurance company. CPG provides insurance coverage to many of the Associations' members, through the Associations' insurance trusts. Plaintiff alleges, among other things, that CPG has a virtual monopoly on AARP and NRTA members' insurance business and therefore extracts monopolistic prices. Plaintiff further alleges that information about this relationship was kept from her as Executive Director, as was financial information about the Associations. Defendants contend in response that plaintiff was dismissed because she was attempting to fire employees in order to replace them with people personally loyal to her. Plaintiff brought this action in May, 1978. Subsequently, plaintiff Miller was sued by AARP in the Superior Court of the District of Columbia, for breach of a consulting agreement. The alleged breach stems from the allegations made by Ms. Miller in the instant case, which AARP claims were disloyal actions contravening the consulting agreement. Ms. Miller has also filed a counterclaim in that action which is substantially similar to the complaint in this action.

Plaintiff has moved to amend her complaint, adding AARP and NRTA, among others, as defendants, and adding a claim that on August 17, 1978, AARP refused to allow her to inspect the Association's books. Plaintiff argues that the liberal construction afforded Federal Rule of Civil Procedure 15(a)[1] supports her claim to amend. Defendants argue that the proposed amendment should not be allowed because it will destroy diversity jurisdiction. Defendants assert that no new matter would be raised by the amended complaint, and they have a right to a federal forum which should not be prejudiced.

A number of courts have held that amendment to add parties who are merely proper and not indispensable forces remand when the parties added are nondiverse. *E. g., Highway Construction Co. v. McClelland,* 15 F.2d 187 (8th Cir. 1926); *Heintz v. Ohio Casualty Insurance Co.,* 112 F.Supp. 199 (S.D.Cal.1953); *Rowland v. Sellers,* 111 F.Supp. 5 (E.D.Tenn.1953). Professor Moore, however, has stated what seems to be the better rule applicable to amendments adding parties that would destroy diversity:

> [I]n the exercise of a sound discretion the district court may permit a new party to be added, although his citizenship destroys diversity and requires a remand. But unless there are strong equities in favor of the amendment, or unless the party is an indispensable party, the court

---

1. Rule 15(a) provides in part: "[L]eave (to amend) shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

should normally deny leave to amend
. . . .

1A Moore's Federal Practice ¶ 0.161[1], at 209 (2d ed. 1974). Thus, a decision favoring amendment and remand can only be made after careful consideration of several factors suggested by the authorities.

If the amended complaint is substantially different from the original complaint, allowing the amendment is appropriate even though it destroys diversity jurisdiction. *See, e. g., Harper Financial Corp. v. Hanson Oil Corp.,* 403 F.Supp. 1405 (W.D.Tenn. 1975). In this case plaintiff seeks to add a claim against the additional defendants, on the ground that they wrongly refused her access to books and records of the Associations. The claim does not significantly add to or detract from the original complaint, however. If this consideration were the only guideline for the Court to follow, there would be no basis for allowing an amendment and subsequent motion for remand. Other considerations, however, weigh appreciably more heavily in favor of leave to amend and remand.

A most important consideration, of course, is the conservation of scarce judicial resources. The possibility of a multiplicity of lawsuits if parallel cases are allowed to proceed in different fora may properly support a decision to allow an amendment that would destroy diversity. *See, e. g., Inger-*

soll v. Pearl Assurance Co.,* 153 F.Supp. 558 (N.D.Cal.1957).[2] The instant action was initially brought in the District of Columbia Superior Court, and there is currently a related action pending in that Court. Plaintiff Miller has filed in the other action a counterclaim substantially similar to the complaint before this Court. Despite defendants' suggestions to the contrary, plaintiff was entitled to file her counterclaim in *AARP v. Miller* even though her original lawsuit had been removed by defendants to federal court. Moreover, the Superior Court suit arises out of the same transactions and events involved in this suit inasmuch as the consulting agreement there at issue was entered into as *quid pro quo* for Ms. Miller's promise not to sue AARP and NRTA. Ms. Miller had threatened to sue the Associations; she was dissuaded from doing so and persuaded to sign a release by the promise of a handsomely salaried consulting arrangement.

Some courts have allowed amendments that destroy diversity when the defendants to be added were either not known at the time of suit, or were originally listed as John Doe defendants. *E. g., Heatherton v. Playboy, Inc.,* 60 F.R.D. 372 (C.D.Cal.1973); *Schindler v. Wabash R.R. Co.,* 84 F.Supp. 319 (W.D.Mo.1949).[3] Plaintiff Miller was well aware of the existence of defendants AARP and NRTA, mentioning them throughout her original complaint. The ac-

---

**2.** The court in *Ingersoll* stated: "The interest of defendant, Pearl Assurance Company, Limited, in having a federal forum is, in this instance now before me, clearly outweighed by the sound policy against multiplicity of actions . . . ." 153 F.Supp. at 560.

Defendants rely on *Fort Howard Paper Co. v. Affiliated F.M. Ins. Co.,* 60 F.R.D. 62 (E.D.Wis. 1973), for the proposition that the interest in multiplicity cannot outweigh the interest in having a federal forum. The court in *Fort Howard,* however, was concerned with the peculiar circumstances before it, and found that given those circumstances the federal forum interest should prevail. For example, the court observed that the multiplicity there anticipated affected primarily the defendant, who did not object to it. *Id.* at 64. In this case, plaintiff is the party who would be burdened with a multiplicity of actions.

**3.** In *Pacific Gas & Elec. Co. v. Fibreboard Prod.,* 116 F.Supp. 377 (N.D.Cal.1953), the

court refused to allow the addition of parties which would defeat diversity. The court pointed out, however, that the plaintiff could have sued all three of the alleged joint tortfeasors, but elected to sue only one; absent a showing of any reason for changing that election other than a desire to have the case remanded to state court, the court would not allow an additional party that would prejudice the right to a federal forum. *Id.* at 381. The instant case is distinguishable from *Pacific Gas,* however, because plaintiff Miller did not, practically speaking, have the election to sue AARP and NRTA at the outset. They had induced her to enter the consulting agreement and release. Thus, it was not plaintiff's election to sue only certain defendants, but her reasonable belief that she could not sue the Associations, and the destruction of that reasonable belief by subsequent events, that are at issue in this case.

cumulation of facts in this case suggests, however, that there was good reason for the omission of AARP and NRTA as defendants in plaintiff's complaint. After Ms. Miller was fired in 1977, she threatened to sue the Associations, presumably on the claims that later formed the basis for the instant complaint. The Associations entered into negotiations with Ms. Miller, and in January, 1978, the parties arrived at an agreement. Ms. Miller was to be retained as a consultant at a substantial salary, and in return, she covenanted not to sue AARP and NRTA. When Ms. Miller filed this suit in May, 1978, salary payments under the agreement were stopped, the organizations being of the view that Ms. Miller breached her duty of loyalty to the Associations by making the allegations contained in the complaint, and by going to the media with those allegations. At the time payments were stopped, this lawsuit had been removed to federal court. Subsequently, AARP sought a declaratory judgment in Superior Court that Ms. Miller had breached the agreement. Thus, the interconnection of the two lawsuits is plain; the addition of the Associations as defendants at this time is sought because of other events in the relationship between the parties, the course of which could not have been foretold.

Finally, there would be no significant prejudice to defendants were this case to be remanded to Superior Court. The case is only in the very earliest stages of discovery. Although these individual defendants are not parties to the pending action in Superior Court, all parties would very likely have originally been named but for Ms. Miller's release. Although it is not for this Court to decide whether the consulting agreement and covenant have been breached by one or both of the parties, that result would have little effect on this decision; plaintiff initially refrained from suing AARP and NRTA because of the release and seeks to add them now because of her view that the release is no longer binding. This Court cannot refuse to allow the addition of parties, if circumstances otherwise warrant the addition, on the basis that there exists a covenant not to sue. The question whether the covenant is a valid bar is a decision on the merits of the case, to be decided by the Superior Court.

The equitable factors considered in the Court's determination whether to allow plaintiff's proposed amendment and to remand to Superior Court weigh rather heavily in plaintiff's favor. Foremost is the interest in economy of judicial resources which will clearly be served by allowing the amendment and subsequent remand. Additionally, plaintiff's reasons for not suing AARP and NRTA initially, but later seeking to add them as defendants, are sound reasons stemming from the larger conflict between the parties and not simply serving what is currently expedient. Further, defendants have shown no prejudice resulting from a transfer back to the Superior Court. Accordingly, leave to amend the complaint will be granted, and, it appearing that no basis for federal jurisdiction exists, the case will be remanded forthwith to the Superior Court of the District of Columbia.