**Crawford SHAW, Plaintiff,**

v.

**Dillard MUNFORD, Griffin Bell, and Thomas Tivnan, Defendants.**

**No. 81 Civ. 4745 (GLG).**

United States District Court, S. D. New York.

Nov. 30, 1981.

---

1210

Shaw & Stedina, New York City, for plaintiff; Carol A. Calhoun, New York City, of counsel.

Parker, Duryee, Zunino, Malone & Carter, New York City, for defendants; Vincent J. Malone, Angelo A. Maurino, Wm. Lee Kinnally, Jr., New York City, of counsel.

### OPINION

GOETTEL, District Judge.

The plaintiff Crawford Shaw brought this action against Griffin Bell, Thomas Tivnan, and Dillard Munford alleging, *inter alia,* that the defendants tortiously interfered with his child custody rights. He originally commenced this action in New York State Supreme Court, Westchester County. Shortly thereafter, the defendants removed the case to federal court on the basis of diversity of citizenship.[1] *See* 28 U.S.C. § 1441 (1976). Before this Court is plaintiff's motion to remand the case to state court or, in the alternative, to amend his complaint to add additional defendants—Vincent Malone and the law firm of

---

1. The plaintiff is a citizen of New York. Griffin Bell and Dillard Munford are citizens of Georgia. Thomas Tivnan is a citizen of New Jersey.

Parker, Duryee, Zunino, Malone & Carter (the Law Firm)—whose presence would divest the Court of diversity jurisdiction.[2]

Prior to addressing the legal questions raised by this motion, a brief review of the unusual circumstances surrounding this lawsuit is appropriate. In 1978, the plaintiff and Danne Brokaw Munford were divorced. Incorporated by reference in the divorce decree was a separation agreement that resolved several issues arising from the dissolution of the marriage. Of particular relevance to this case is the provision dealing with the custody of the couple's minor children.[3] According to the agreement, the children would reside with their mother in Westchester County.[4] She could not remove the children from the county, however, without the plaintiff's permission or a court order of the New York State Supreme Court, Westchester County.

For about two years, these provisions apparently posed no problems for the parties. Early in 1980, however, the former Mrs. Shaw announced her engagement to Dillard Munford, a resident of Georgia. She then requested plaintiff's permission to move the children with her to Atlanta. He refused, and an emotional custody battle that spawned this lawsuit ensued.

The first salvos were fired by Mrs. Munford. On April 29, 1980, she sought a court order granting her sole and exclusive custody of the children and permitting her to move them to Atlanta. The plaintiff responded by applying for sole custody of the children and by moving for a preliminary injunction precluding removal of the children to Atlanta pending resolution of the custody question. On June 16, 1980, Justice

Gurahian of the New York State Supreme Court, Westchester County, granted the motion for a preliminary injunction and directed that a plenary hearing on the custody issue be held.

Several weeks following this decision, Justice Gurahian received a letter signed by Griffin Bell, a former Attorney General of the United States. In essence, it stated that, if the children were allowed to move to Atlanta with their mother, Bell would assure their return upon the determination of custody. Neither the plaintiff nor his counsel, however, received a copy of this letter. They were apprised of it only when Mrs. Munford moved for another order permitting her to take the children to Atlanta. (A copy of the letter was attached to the moving affidavit of her attorney, Thomas Tivnan, a partner in the Law Firm.) The plaintiff was incensed by this incident because of the *ex parte* nature of the communication and because of his perception that, if the children had been allowed to move to Atlanta, the court presiding over the custody hearing would have been reluctant to uproot the children by awarding custody to the plaintiff. Stated otherwise, he viewed the letter as an unethical attempt to deal him a *fait accompli* with respect to the issue of custody. It apparently offended him to such an extent that, even though the letter ultimately had no effect on his custody rights,[5] he deemed it fitting to commence this civil action in the New York State court.[6]

Shortly after filing his complaint, the plaintiff received information that led him to believe that additional defendants should be brought into the lawsuit. First, he received a letter from Griffin Bell to Justice Barrett Hickman of the New York State

---

2. Vincent Malone and the Law Firm are citizens of New York. Because the plaintiff is also a citizen of New York, *see* note 1 *supra*, complete diversity would not exist.

3. At the time of the divorce, the Shaws had three minor children. Since then, one of the children has reached the age of majority.

4. Although the children were to reside with their mother, custody was to be maintained jointly.

5. On March 19, 1981, the plaintiff was awarded full custody of the children. The children have resided with the plaintiff since the marriage of their mother to Dillard Munford on June 28, 1980.

6. Additionally, attorney disciplinary proceedings were brought against Griffin Bell in Georgia. (These proceedings were subsequently dismissed.) The plaintiff, however, has not admitted that he had a hand in initiating these proceedings.

Supreme Court.[7] Essentially, it stated that Bell had not communicated *ex parte* with Justice Gurahian nor had he authorized anyone to do so on his behalf. Bell wrote that he had placed the letter in the hands of Vincent Malone, a partner in the Law Firm, with the intention that it be used in lieu of his testimony when Mrs. Munford sought an order permitting her to move the children to Atlanta. Second, he received copies of correspondence between Bell and Malone. This correspondence indicated that Malone had prepared a draft of the letter to Justice Gurahian and had sent it to Bell for his approval. It also confirmed Bell's assertion that he had placed the letter in Malone's hands. Third, Thomas Tivnan informed the plaintiff that he personally had nothing to do with sending the letter to Justice Gurahian. According to the plaintiff, this information indicated that Vincent Malone and others in the Law Firm may also have been involved in the allegedly tortious conduct. Consequently, he moved in state court to add Malone and the Law Firm as additional defendants on July 31, 1981. No action could be taken on the motion, however, because the defendants had removed the case to this Court on July 30, 1981. (Because notice of removal was effectuated by mail, the plaintiff claims to have had no actual notice of the removal until August 3, 1981.)

It is against this unusual backdrop that we now view plaintiff's motion to remand or, in the alternative, to add additional parties. For the reasons stated below, the plaintiff will be permitted to add the additional defendants. Moreover, because such joinder will divest this Court of diversity jurisdiction, this case will be remanded to state court.

### I. *Motion to Remand*

Curiously, the plaintiff has not structured his motion so that the Court would decide whether to grant permission to join the additional defendants before ruling on whether the case should be remanded. Rather, he has simply moved to remand or, in the alternative, for permission to add Malone and the Law Firm as defendants. The gist of his argument is as follows. If the state court had granted plaintiff's motion to join additional defendants, removal would have been precluded. Because plaintiff made the motion in state court before he knew of the removal, considerations of fairness compel this Court to exercise its discretion by remanding the case so that the motion can now be ruled upon in state court.

■ The plaintiff's attempt to justify remand on these grounds is without merit. A remand can be ordered only "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction." 28 U.S.C. § 1447(c) (1976); *see Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976) (the exclusive grounds for remanding a case to state court are established by section 1447(c)). Although the unusual sequence of events surrounding the plaintiff's motion in state court can be considered when determining whether the additional defendants can be joined, that removal would have been improvident if a motion had been filed earlier and granted clearly does not satisfy the statutory criteria. In this case, a remand would be justified only if this Court first grants plaintiff's motion to join the additional defendants, thereby destroying diversity jurisdiction. Accordingly, plaintiff's motion to remand under the theory proffered in his motion papers is denied.

### II. *Motion to Join Additional Defendants*

■ The plaintiff's alternative motion to amend his complaint to join additional de-

---

7. Justice Hickman presided over the custody hearing and ruled in favor of the plaintiff. *See* note 5 *supra*. During the course of his opinion, Justice Hickman was critical of the *ex parte* communication with Justice Gurahian. He wrote that the purpose of the letter "was clearly to effectuate a change in Judge Gurahian's order in contravention of the [plaintiff's] position and without giving the [plaintiff] a fair opportunity to argue against a change in Judge Gurahian's decision." Complaint ¶ 23 (quoting Hickman, J.). He viewed it as "another example of the questionable efforts on the part of [Mrs. Munford] to win this case." *Id.*

fendants cannot be disposed of as quickly as his motion to remand. At the threshold, the Court must determine whether the permissive joinder requirements of Rule 20 of the Federal Rules of Civil Procedure will be satisfied.[8] *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980). Rule 20(a) allows joinder of defendants in one action "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a). In this instance, these requisites clearly are satisfied. The plaintiff seeks damages from the defendants because of their alleged participation in the same transaction—the *ex parte* communication with Justice Gurahian. Moreover, there are questions of law and fact common to all defendants. To cite but one example, there will be a question as to whether the plaintiff sustained any compensable damages as a result of the *ex parte* communication.

■ Fulfillment of the specific requirements of Rule 20, however, is not enough to warrant granting the plaintiff's motion. Permissive joinder rests with the sound discretion of the Court, which must determine if joinder "will comport with the principles of fundamental fairness." *Desert Empire Bank v. Insurance Co. of North America,*

supra, 623 F.2d at 1375. This presents a particularly difficult question in the case at bar because joinder will destroy this Court's diversity jurisdiction.[9]

■ In opposition to the plaintiff's motion, the defendants have pointed to the oft stated general rule that the plaintiff cannot act so as to divest a court of jurisdiction over a case that has been properly removed. *See Comstock v. Morgan*, 165 F.Supp. 798, 801 (W.D.Mo.1958); 1A Moore's Federal Practice ¶ 0.161[1], at 208–10 (2d ed. 1981); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723, at 598–99 (1976). Indeed, when joinder will necessitate a remand to state court, a trial court should pay particular attention to the motive underlying the plaintiff's motion because he "may well be inclined to add a new defendant only to have his action remanded to the state forum, the one that he had originally chosen as best suited to his purposes." *Desert Empire Bank v. Insurance Co. of North America, supra*, 623 F.2d at 1376. That a court should be cautious, however, should not require it to preclude summarily any action that would divest the court of jurisdiction.[10] Rather, when there is no showing that the plaintiff seeks to join the additional defendants solely to effectuate a remand, the better rule seems to be that "in the exercise of . . . sound discretion the court may permit a new party to be added, although his citizenship destroys di-

---

8. The plaintiff has not argued that Malone and the Law Firm are indispensible parties who must be joined under Rule 19 of the Federal Rules of Civil Procedure. In any event, resolution of this issue is unnecessary for the purposes of this motion.

9. Whether to allow a plaintiff to proceed in a manner that will divest the Court of jurisdiction after the case has been properly removed is a difficult question and one that calls for a thorough briefing by the parties. Unfortunately, the parties have cited virtually no cases in support of their positions and have presented this Court with only a superficial analysis of the issue.

10. The Fifth Circuit has gone so far as to state that a district court lacks discretion to allow the joinder of non-indispensible parties whose joinder would destroy diversity. *In re Merrimack Mutual Fire Insurance Co.*, 587 F.2d 642, 647 & n.8 (5th Cir. 1978). Relying on *Therm-*

*tron Products, Inc. v. Hermansdorfer, supra*, the Fifth Circuit noted that "*Thermtron* makes it clear that such discretion is not vested in the district judge." 587 F.2d at 647 n.8. We think that this far overstates the import of *Thermtron*. In *Thermtron*, a case in which a district judge had ordered a remand simply because of calendar congestion, the Supreme Court merely held that 28 U.S.C. § 1447(c) (1976) stated the exclusive grounds for remand. *See* pt. I *supra*. There is nothing in the opinion to suggest that the discretion accorded a district judge under Rule 20 has been abrogated in situations in which joinder will destroy diversity. It should also be noted that several decisions after *Thermtron* have implicitly rejected the approach of the Fifth Circuit. *See Desert Empire Bank v. Insurance Co. of North America, supra; Soam Corp. v. Trane Co.*, 506 F.Supp. 302 (S.D.N.Y.1980); *Miller v. Davis*, 464 F.Supp. 458 (D.D.C.1978).

versity and requires a remand." 1A Moore's Federal Practice, *supra*, ¶ 0.161[1], at 209; *accord, Desert Empire Bank v. Insurance Co. of North America, supra*, (plaintiff permitted to join additional defendant whose presence destroyed diversity jurisdiction and necessitated a remand); *Soam Corp. v. Trane Co.*, 506 F.Supp. 302 (S.D.N.Y.1980) (same); *Miller v. Davis*, 464 F.Supp. 458 (D.D.C.1978) (same); *Harper Financial Corp. v. Hanson Oil Corp.*, 403 F.Supp. 1405 (W.D.Tenn.1975) (same): *see J.L. Stanhope v. Ford Motor Credit Co.*, 483 F.Supp. 275, 278–79 (W.D.Ark.1980) (when there was no evidence that the plaintiff was attempting to oust the court of jurisdiction by adding non-diverse defendants, "remand [would] not transgress the policy behind the rule that a plaintiff should not be allowed to force a remand by action taken after removal"). *See also Littlefield v. Continental Casualty Co.*, 475 F.Supp. 887 (C.D.Cal.1979) (joinder of additional defendants that destroyed diversity allowed when the defendants were originally listed as John Doe defendants); *Heatherton v. Playboy, Inc.*, 60 F.R.D. 372 (C.D.Cal.1973) (same).

■ In the case at bar, there is no reason to believe that the motive underlying the plaintiff's motion to join Malone and the Law Firm as additional defendants is to deprive this Court of jurisdiction to hear the case. When he filed his complaint in July 1981, the plaintiff apparently believed that only Bell, Tivnan, and Munford were responsible for the *ex parte* communication with Justice Gurahian. Sometime near the end of July, however, Bell sent the plaintiff copies of correspondence that could reasonably lead one to believe that Vincent Malone, or someone in the Law Firm, had sent the letter to Justice Gurahian and that both parties should be joined as defendants in the lawsuit. This indicates, not an improper motive, but simply ignorance of the circumstances surrounding the transmission of the letter. *See Soam Corp. v. Trane Co., supra*, 506 F.Supp. at 308 (joinder of non-diverse party allowed because plaintiff was unaware of all the facts when suit was commenced); *Harper Financial Corp. v.*

*Hanson Oil Corp., supra*, 403 F.Supp. at 1407 (joinder of non-diverse defendants allowed when, "[u]tilizing discovery for one of its intended purposes, the plaintiff learned that other parties in addition to the original defendants might be liable"). Any assertion that the plaintiff is acting to deprive this Court of jurisdiction is also belied by his actions when he learned of this information, that is, before he had actual notice of the removal, he promptly moved in state court to join the additional defendants. Unless the plaintiff knew of the removal and the motion in state court was part of a ploy to conceal his real reason for bringing a subsequent motion in federal court, the only logical conclusion that can be drawn is that the plaintiff now seeks to join Malone and the Law Firm solely because of a belief that they are proper parties to this action.

Having concluded that the reasons for bringing this motion are legitimate, the Court's task becomes less difficult because the other equitable considerations point toward permitting joinder. First, there would be no significant prejudice to the defendants were joinder permitted and the case remanded to state court. *See Desert Empire Bank v. Insurance Co. of North America, supra*, 623 F.2d at 1375; *Miller v. Davis, supra*, 464 F.Supp. at 461. Unlike actions that have been remanded during or after discovery, *see Soam Corp. v. Trane Co., supra; Harper Financial Corp. v. Hanson Oil Corp., supra*, discovery in this case has not yet begun. Relatively speaking, this lawsuit is still in its infancy. Second, "[t]he possibility of a multiplicity of lawsuits if parallel cases are allowed to proceed in different fora may properly support a decision to allow an amendment that would destroy diversity." *Miller v. Davis, supra*, 464 F.Supp. at 460. If this motion were denied, it seems quite reasonable to speculate that the plaintiff would commence another action in state court naming Malone and the Law Firm as defendants. Such a course of action, if taken, would result in a waste of scarce judicial resources, especially since the factual and legal issues would be strikingly similar, if not identical.[11]

---

11. Other factors that should be considered when determining whether to allow permissive joinder are the delay of the movant in seeking to amend his pleadings, the closeness of the

This Court is mindful of the general rule that a court should look to "the preservation rather than the destruction of jurisdiction" when adjudicating controversies concerning the adding and dropping of parties. 1A Moore's Federal Practice, *supra,* ¶ 0.161[1], at 208. In light of the unusual sequence of events that occurred around the time of removal, the lack of an improper motive underlying the plaintiff's motion, and the lack of significant prejudice to the defendants if additional parties are joined, however, an exception is warranted in the case at bar. The principles of fundamental fairness will not be compromised by the joinder of Malone and the Law Firm as defendants in this action. Accordingly, the plaintiff's alternative motion is granted.

■ One final step must be taken, however, because of the the addition of Malone and the Law Firm. For jurisdiction to exist, there must be complete diversity between the plaintiff and the defendants. This requirement is "unequivocal and is controlling whether suit originates in a federal court or is removed. If suit . . . could not have initially been brought in [federal court], it follows that it cannot be maintained if diversity is destroyed through amendment of the pleadings." *J.L. Stanhope v. Ford Motor Credit Co.,* supra, 483 F.Supp. at 277; *see Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). Because Malone, the Law Firm, and the plaintiff are citizens of New York, see note 2 *supra,* their joinder destroys this Court's jurisdiction over the lawsuit. Consequently, this case will be remanded [12] to the New York State Supreme Court, Westchester County, pursuant to 28 U.S.C. § 1447(c).[13] The clerk will enter the appropriate order.[14]

SO ORDERED.

relationship between the present parties and the parties to be joined, and whether the party to be joined has had any notice of the pending action. *Desert Empire Bank v. Insurance Co. of North America, supra,* 623 F.2d at 1375. A consideration of these factors also supports a decision that joinder is proper in this case. The plaintiff moved to join the additional defendants promptly after learning of their possible involvement in the *ex parte* communication, Malone and the Law Firm are closely associated with the present defendants, and they surely knew of the plaintiff's suit from its inception.

12. In effect, the Court is granting the plaintiff's motion to remand, albeit on grounds other than those proffered in his motion papers. Even if the plaintiff had not made such a motion, however, the Court could have remanded the action to state court. *See* 1A Moore's Federal Practice, *supra,* ¶ 0.168[4], at 524 ("a federal court *sua sponte* may remand the suit under § 1447(c)").

13. Since the Supreme Court's decision in *Thermtron Products, Inc. v. Hermansdorfer, supra,* there has been some question as to whether a district court has discretion to remand a case that has been properly removed. As noted above, *Thermtron* held that a case can be remanded only if the statutory criteria of 28 U.S.C. § 1447(c) (1976) have been satisfied, that is, if the case had been removed improvidently and without jurisdiction. 423 U.S. at 345, 96 S.Ct. at 590; *see* pt. I *supra* ; note 10 *supra.* At least one court has interpreted this

to mean that only circumstances existing at the time of removal can be considered. *Skinner v. American Oil Co.,* 470 F.Supp. 229, 233–34 (S.D.Iowa 1979). Under this theory, if diversity jurisdiction is destroyed after the removal, the proper course of action is dismissal rather than remand. *See id.* at 231–34. This appears, however, to be an overly narrow interpretation of § 1447(c), and most courts that have confronted this problem have rejected the *Skinner* approach. *See Desert Empire Bank v. Insurance Co. of North America, supra,* 623 F.2d at 1377; *Soam Corp. v. Trane Co., supra,* 506 F.Supp. at 305–08; *J.L. Stanhope v. Ford Motor Credit Co., supra,* 483 F.Supp. at 277–79; *Miller v. Davis, supra,* 464 F.Supp. at 461. Based on an analysis of the predecessor to § 1447(c) and the Congressional intent in enacting the current statute, they have concluded that events after removal can be the basis of a remand order. *See Soam Corp. v. Trane Co., supra,* 506 F.Supp. at 305–08; *J.L. Stanhope v. Ford Motor Credit Co., supra,* 483 F.Supp. at 277–79. Even if the *Skinner* court were correct, however, there is another justification for remanding the instant action. As none of the parties will be prejudiced by the amendment of the plaintiff's complaint, the amendment can be treated as being part of the original complaint pursuant to Fed.R.Civ.P. 15(c). *Soam Corp. v. Trane Co., supra,* 506 F.Supp. at 308.

14. Several other motions have been filed in this action. The defendants have moved for judgment on the pleadings or, in the alternative, for

summary judgment. The plaintiff has cross-moved for summary judgment or for partial summary judgment on the issue of liability. The defendants have also moved for an order pursuant to Fed.R.Civ.P. 37(a) compelling the plaintiff to attend and give testimony at his deposition. Although we have serious doubts as to whether the plaintiff has a meritorious claim, we need not reach the merits of these motions because of the conclusions reached in this opinion.