KATHY SIMPSON, Adm'r of the Estate of Leland Simpson, Plaintiff-Appellee, v. GENERAL MOTORS CORPORATION, Defendant and Counterdefendant-Appellant—(Midco Sales & Service, Defendant and Counterplaintiff-Appellee).

First District (1st Division) No. 82—613

Opinion filed September 26, 1983.—Rehearing denied November 7, 1983.

Lord, Bissell & Brook, of Chicago (Otis M. Smith and Nicholas J. Wittner, both of General Motors Corporation, and Michael Davis, Hugh C. Griffin, and Kenneth F. Berg, of counsel), for appellant General Motors Corporation.

Donald N. Hoppe, of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellate Midco Sales & Service.

Joseph R. Curcio, of Chicago (Sidney Z. Karasik and Catherine L. Grahn, of counsel), for appellee Kathy Simpson.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Kathy Simpson, brought an action for wrongful death predicated on a strict products liability theory against defendants General Motors (GM) and Midco Sales & Service (Midco). Plaintiff's decedent, Leland Simpson, died as a result of injuries sustained while operating a product manufactured by GM and distributed by Midco. Defendants pleaded assumption of risk. After trial, in answer to a special interrogatory, the jury found that decedent "was guilty of assumption of risk." Based on a "comparative fault" instruction, the jury also attributed 5% of the total fault to plaintiff. The jury returned a verdict in favor of plaintiff for $875,000, which the trial court reduced to $831,250 based on the jury's comparative fault findings. Additionally, a directed verdict was entered in Midco's favor on its counterclaim for indemnity against GM. GM and Midco appeal from the judgment entered in favor of plaintiff, and GM also appeals from the directed verdict entered against it.

The pertinent facts are as follows. On February 3, 1976, plaintiff's decedent was killed when the Terex TS-24 earth scraper machine that he was operating overturned in the course of his employment at a stone quarry. The earth scraper was designed and manufactured by defendant GM and was sold to decedent's employer by defendant Midco. At trial, plaintiff introduced expert testimony that the earth scraper was unreasonably dangerous because it lacked an effective roll-over protective structure.

GM filed two separate affirmative defenses. The first defense was based on assumption of risk and the second was predicated on the contributory negligence of plaintiff's decedent. The trial court ruled that neither of the affirmative defenses were proper, and refused to give GM's instructions setting forth assumption of risk as a complete bar to plaintiff's claim and its instructions on contributory negligence. Instead, the court instructed the jury on the subjective elements of the assumption of risk defense and gave two special interrogatories to the jury. The first interrogatory asked whether plaintiff's decedent was guilty of assumption of risk. The jury answered "yes" to this first interrogatory. The trial court further instructed the jury that if they answered in the affirmative to the first special interrogatory, as they did, they were to proceed to answer a second interrogatory which provided as follows:

"Assuming that 100% represents the combined fault of the plaintiff's decedent and of the defendant that contributed as a proximate cause to plaintiff's decedent's death, what proportion of such combined fault is attributable to the plaintiff's decedent on the one hand and what proportion is attributable to the defendant on the other hand?

Answer: 'to plaintiff' _____ %

'to defendant' _____ %."

The jury answered this second interrogatory by attributing 5% of the total fault to plaintiff's decedent and 95% of the fault to defendants. It subsequently returned a total damage verdict of $875,000, which the trial court reduced to $831,250 pursuant to the fault allocations made by the jury.

On appeal, GM and Midco argue that judgment be entered in their favor as a matter of law based on the jury's answer to the special interrogatory finding decedent guilty of assumption of risk.

■ We must reject defendants' first argument in view of the recent holding by the supreme court in *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104. Prior to *Coney*, misuse and assumption of risk by the plaintiff were total defenses to recovery in strict products liability actions. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.) *Coney*, however, extended comparative fault principles to strict products liability actions, holding that the defenses of misuse and assumption of risk no longer preclude recovery in such actions. The court held that once the defendant's liability is established, and where the plaintiff's misconduct contributes to cause the damages, the comparative fault doctrine will operate to reduce plaintiff's recovery by that amount which the trier of fact finds him at fault. *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 119.

Accordingly, in the instant case the trial judge was correct in apportioning damages attributed to the assumption of risk by the plaintiff.

We next consider defendants' contention that the trial court erred in failing to submit the question of plaintiff's contributory negligence to the jury. Defendants allege that if the comparative fault principle applies in a strict products liability action, it should apply to all aspects of plaintiff's decedent's culpability, including his alleged contributory negligence. We disagree.

■ Initially, we note that after reviewing the record we find no evidence indicating any contributory negligence on the part of plaintiff's decedent, and the trial court therefore properly refused to instruct the jury on that issue. Even assuming, however, such evidence

existed, we nevertheless find no error on the part of the trial court.

In *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305, the supreme court held that the contributory negligence of a plaintiff will not be available as a defense in a strict products liability action. More specifically, the court stated:

"The question before us is whether, in a strict product liability in tort action, the concept of contributory negligence as it prevails in this State shall bar a plaintiff's recovery, or whether that recovery will be barred only when the nature of plaintiff's misconduct has reached the point at which he has misused the product or has assumed the risk of its use. We are persuaded that the policy considerations which led us to adopt strict tort liability in *Suvada* compel the elimination of 'contributory negligence' as a bar to recovery. *** We accordingly hold that contributory negligence, as it is known in this State, is not a bar to recovery in a strict product liability tort action in Illinois, and the plaintiff need not plead and prove his exercise of due care. ***" 45 Ill. 2d 418, 426-27.

In *Coney*, the supreme court reiterated its posture in *Williams*. Holding that the ordinary contributory negligence of a plaintiff will not preclude, nor diminish, his recovery in an action predicated on strict liability, the *Coney* court stated:

"Following the Restatement, this court, in *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, adopted misuse and assumption of the risk as complete defenses to a strict products liability action. But, at the same time, it was said there that '[c]ontributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence.' (45 Ill. 2d 418, 423.) We adhere to this statement. We believe that a consumer's unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect should not be compared as a damage-reducing factor. As the court in *West v. Caterpillar Tractor Co.* (Fla. 1976), 336 So. 2d 80, 92, said: 'The consumer or user is entitled to believe that the product will do the job for which it was built.' " *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 119.

In view of the above-quoted language in *Coney*, we conclude that the trial court acted properly in refusing to instruct the jury on the decedent's contributory negligence.

We further note that permitting the ordinary contributory negligence of a plaintiff to reduce damages in strict liability actions would

be incompatible with the policy considerations underlying this tort theory. Strict liability recognizes a duty on the part of a manufacturer to design a product so as to guard against those injuries which may result from a consumer's foreseeable carelessness or negligence. (See *Suter v. San Angelo Foundry & Machine Co.* (1979), 81 N.J. 150, 406 A.2d 140.) Therefore, strict liability aims to place the loss caused by defective products on those who create the risks and reap the profit by placing a defective product in the stream of commerce. (*Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) In order to effectively accomplish this goal, the plaintiff in a strict liability action is relieved of the burden of proving negligence on the part of the defendant; the focus is on the design and performance of the product itself, and liability for a defective product is imposed regardless of whether the defect resulted from the negligence of the manufacturer. (See *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 82.) To now inject ordinary contributory negligence concepts into strict products liability litigation would seriously undermine the consumer protection intended by this particular type of litigation.

Finally, GM argues that Midco was not entitled to a directed verdict on its counterclaim for indemnity against GM. GM contends that misuse and assumption of risk are defenses to such an indemnity claim and that factual questions were raised by the evidence.

We recognize that in an indemnity action predicated on a strict liability theory, the indemnity plaintiff may not recover where he has either misused the product or assumed the risk of the defect. (*Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857.) In the present case, however, the record is bare of evidence that would support a finding of assumption of risk or misuse by Midco. The primary plaintiff alleged that the earth scraper was unreasonably dangerous because it lacked an effective roll-over protective structure and presented evidence to that effect. The only evidence upon which Midco was held liable to the plaintiff was that it had sold the earth scraper to plaintiff's employer in 1971. Hence, Midco was merely a distributor of a product that was defective when it left the control of GM. The record reveals no evidence of any independent acts or omissions by Midco that may have contributed to plaintiff's injury. In fact, at the close of plaintiff's case, counsel for GM admitted that GM was not contending there were any independent acts or omissions on the part of Midco and that it would present no evidence to that effect.

The real tenor of GM's argument is that Midco should have remedied the defect created by GM. This attempt by GM to delegate responsibility must fail since it is contrary to the goal of strict liability to place the loss caused by defective products on those creating the risk. It is a well-settled principle that a manufacturer is under a non-delegable duty to make a product that is reasonably safe; it may not delegate that duty to the dealer, user or purchaser of the product. (*Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678, 418 N.E.2d 1079; *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.) Further, this court previously has rejected the argument that an entity down the distributive chain has an identical duty to that of the manufacturer. See *Texaco, Inc. v. McGrew Lumber Co.* (1969), 117 Ill. App. 2d 351, 254 N.E.2d 584.

We must further reject GM's allegation that the principle of comparative fault, as adopted by the supreme court in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, should apply in the instant indemnity action. A similar contention was set forth in *Coney*. There, the defendant, in arguing for the abolition of joint and several liability, contended that *Alvis* mandates that a tortfeasor should be liable only to the extent that his negligent acts or omissions produced the damages. (*Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 124.) This argument was rejected by the supreme court which expressly retained the doctrine of joint and several liability. Citing the *Coney* decision, this court, in *Justus v. Abex Corp.* (1983), 117 Ill. App. 3d 1018, also declined to apportion a defendant's liability in an indemnity action on a comparative fault basis.

Finally, we note that permitting an apportionment of damages predicated on comparative fault principles would effectively eliminate the distinction between indemnity and contribution. The legislature, in enacting the contribution act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*) which applies to causes of actions arising on or after March 1, 1978, refused to give the act retroactive application. In the case at bar, the cause of action arose prior to the act's cut-off date. We decline to accomplish indirectly what the legislature has already decided to do directly.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGLOON and GOLDBERG, JJ., concur.