(No. 59444.—

KATHY SIMPSON, Adm'r, Appellee, v. GENERAL MO-TORS CORPORATION *et al.*, Appellants.

*Opinion filed July 17, 1985.—Rehearing denied September 27, 1985.*

RYAN and MILLER, JJ., dissenting.

Lord, Bissell & Brook, of Chicago (Michael Davis and Hugh C. Griffin, both of Chicago, and Nicholas J. Wittner, of Detroit, Michigan, of counsel), for appellants.

Joseph R. Curcio, of Chicago (Sidney Z. Karasik and Catherine L. Grahn, of counsel), for appellee Kathy Simpson.

Donald N. Hoppe, of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee Midco Sales & Service.

David A. Novoselsky and George M. Elsener, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Elizabeth L. West, of Ross & Hardies, of Chicago (Victor E. Schwartz, Sara B. Glenn and Lorraine B. Halloway, of Crowell & Moring, of Washington, D.C., of counsel), for *amici curiae* Motor Vehicle Manufacturers Association *et al.*

JUSTICE GOLDENHERSH delivered the opinion of the court:

General Motors Corporation (hereafter defendant) and Midco Sales & Service (hereafter Midco) appealed from the judgment of the circuit court of Cook County entered upon a jury verdict in favor of plaintiff, Kathy Simpson, administrator of the estate of Leland Simpson. The appellate court affirmed (118 Ill. App. 3d 479), and we allowed defendant's petition for leave to appeal (94 Ill. 2d R. 315). The facts are adequately set forth in the opinion of the appellate court and will be stated here only to the extent necessary to discuss the issues.

Plaintiff's decedent, Leland Simpson, died as the result of injuries suffered while he was operating a Terex TS24 earth scraper which overturned on an icy hill. The earth scraper was designed and manufactured by defendant and was sold to decedent's employer, Charleston Stone Company, by Midco. At trial, plaintiff introduced expert testimony that the earth scraper was unreasonably dangerous because it lacked a rollover protective structure. The evidence also showed that decedent was aware of the risk created by the absence of the roll bar. The circuit court held that defendant's affirmative defenses of assumption of risk and comparative negligence were not applicable and refused defendant's instructions setting forth assumption of risk as a complete bar to plaintiff's claim and its instructions on comparative negligence. The jury returned a verdict for plaintiff and against both defendant and Midco on the issue of liability and, in response to special interrogatories, found that plaintiff's decedent was guilty of assumption of the risk, attributing 95% of the fault to defendant and Midco jointly and 5% to decedent. The jury assessed damages in the amount of $875,000 which the circuit court reduced to $831,250 based on the comparative fault allocation made by the jury.

Defendant and Midco had filed cross-claims for indemnity against each other, and at the conclusion of the plaintiff's case the circuit court directed a verdict in favor of Midco and against defendant on the cross-claims.

The appellate court affirmed the judgment. It held that *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, "extended comparative fault principles to strict products liability actions" (118 Ill. App. 3d 479, 481), and that the defenses of misuse and assumption of risk no longer preclude recovery (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418), but "operate to reduce plaintiff's recovery by that amount which the trier

of fact finds him at fault" (118 Ill. App. 3d 479, 481). The appellate court rejected defendant's contention that comparative fault should apply to all aspects of the plaintiff's decedent's culpability, including his alleged contributory negligence.

Defendant contends that limiting consideration of plaintiff's decedent's comparative fault to the decedent's misuse of the product and assumption of the risk, thus eliminating from consideration comparative negligence, defeats the purpose of the comparative fault doctrine and produces inconsistent and inequitable results. It argues that under *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, all of plaintiff's decedent's contributory negligence, except failure to discover the defect, should serve to reduce damages in an action based on strict tort liability and that the application of comparative negligence does not conflict with any principle of strict liability in tort.

*Amici curiae*, the Motor Vehicle Manufacturers Association and the Product Liability Advisory Council, argue that applying comparative fault to strict product liability cases advances the fundamental goals of tort law, that comparative fault "works best in its absolute form and should be applied to all of a product user's conduct," and that the proper application of comparative fault "permits the courts to discard the outmoded and artificial distinctions perpetuated by section 402(a) of the Restatement." They contend that the judgment should be reversed and the cause remanded for submission to a jury with instructions to apply comparative negligence.

Plaintiff contends that in *Coney* this court expressly declined to adopt the position espoused here by defendants and *amici*. Plaintiff notes that in *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, the court defined three types of misconduct which other jurisdictions have generically denominated "contributory

negligence" and distinguished contributory negligence from assumption of the risk and misuse of the product. She argues that contributory negligence of a consumer/ user, as distinguished from assumption of the risk and misuse of the product, is not a defense in a strict liability action and therefore, when comparative fault is considered, is not properly a damage-reducing factor.

In *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, it was necessary to decide whether contributory negligence consisting of the failure to discover the defect in the product, or to guard against the possibility of its existence, was a defense to the action. (45 Ill. 2d 418, 423.) The court defined contributory negligence, misuse, and assumption of the risk, stating that "[plaintiffs'] recovery-barring conduct, while given different labels, is ofttimes treated within the general concept of 'contributory negligence.' [Citations.]" (45 Ill. 2d 418, 425.) The court noted that plaintiffs who misuse a product (*i.e.*, use it for a purpose neither intended nor foreseeable by the defendant) and plaintiffs who assume the risk (*i.e.*, proceed in disregard of a known dangerous condition) possess a "greater degree of culpability" than plaintiffs who are guilty of simple contributory negligence (*i.e.*, lack of due care for one's own safety as measured by the objective reasonable-man standard). (45 Ill. 2d 418, 425-26.) The late Justice Dooley, characterizing the distinction, said:

> "Contributory negligence is fault by the plaintiff consisting of his departure from the standard of the reasonable man. It comes into play when there is a question whether the plaintiff exercised the degree of care an ordinarily prudent person would have exercised under similar circumstances. By contrast, assumption of risk relates to a plaintiff's intentional exposure of himself to a known danger." 1 J. Dooley, Modern Tort Law sec. 4.04, at 94 (1982).

This appeal presents the question whether contributory negligence, as defined in *Williams,* should be compared in allocating fault in a strict products liability action. Simply stated, defendant's argument is that (1) the best argument against considering a product user's negligence in failing to discover or inspect for defects was the inequity of the contributory negligence system; (2) the adoption of comparative fault has moderated the common law's harsh rule precluding recovery to a plaintiff who may be only minimally negligent; (3) therefore, because of the elimination of these harsh results, we should impose upon plaintiff the duty of due care for his own safety and liability for that proportion of his injury proximately caused by a breach of this duty.

The decision of the issue presented requires consideration of the reasons for the adoption of the doctrine of comparative fault. In *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, the court recognized the right of contribution as between tortfeasors responsible for the plaintiff's injury, holding that it was inequitable to place the entire burden of the loss on a single defendant when another defendant was also at fault.

In *Alvis v. Ribar* (1981), 85 Ill. 2d 1, it was held that comparative negligence should be applied in place of contributory negligence in order to avoid the inequitable results which often occurred in negligence actions, where contributory negligence, even if fairly minor in nature, precluded recovery against a negligent defendant. The rationale of comparison of fault for the purpose of allocation of damages is that conduct which previously would have barred the plaintiff's claim serves instead to reduce the recovery so that the plaintiff bears the burden of his loss in direct proportion to his fault. (*Alvis v. Ribar* (1981), 85 Ill. 2d 1.) In *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, the court extended comparative

negligence principles to strict liability actions, holding that "application of comparative fault principles in strict products liability actions would not frustrate this court's fundamental reasons for adopting strict products liability ***." 97 Ill. 2d 104, 116.

The court said, too:

> "Following the Restatement, this court, in *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, adopted misuse and assumption of the risk as complete defenses to a strict products liability action. But, at the same time, it was said there that '[c]ontributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence.' (45 Ill. 2d 418, 423.) We adhere to this statement. We believe that a consumer's unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect should not be compared as a damage-reducing factor." 97 Ill. 2d 104, 119.

We are of the opinion that the conclusions reached in *Williams* and reaffirmed in *Coney* and most recently in *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, are valid, and we find nothing in the authorities cited by defendant or *amici* to persuade us that the doctrine of comparative fault requires consideration of contributory negligence in a products liability case. We note, parenthetically, that to the extent some of the authorities from other jurisdictions appear to differ with the conclusion which we reach here, for the most part the difference is in terminology rather than substance.

Because of the conclusion reached we need not consider the contentions of the parties concerning whether there was evidence of contributory negligence on the part of plaintiff's decedent. For the reasons set forth, the judgment is affirmed.

*Judgment affirmed.*

JUSTICE RYAN, dissenting:

The opinion in this case severely restricts the holding of this court in *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, and places Illinois with the small minority of States which either do not apply comparative fault to products liability cases or do so on a very limited basis.

The *Coney* opinion sets forth the various States that apply comparative negligence or fault to product liability cases and those States that have declined to do so. As noted in *Coney*, a vast majority of the jurisdictions that have considered the question have applied comparative principles. In some jurisdictions the courts have considered the doctrine in terms of comparative negligence. Others have referred to it as comparative fault and others as comparative causation. As noted in *Coney*, in applying comparative negligence or fault to a product liability case, conceptually we do not focus on the negligent conduct of the plaintiff or the defective product of the defendant. The defective product establishes the liability. The negligence or wrongful conduct of the plaintiff is not considered as a defense. It is instead viewed as a recovery-reducing factor. Both the defective product and the plaintiff's negligent conduct are viewed in terms of causation of the resulting injury.

Although this court in *Coney* held that the defense of comparative fault applies in products liability cases, in reality the court applied the principle of comparative causation. (See *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 118.) Under either consideration, the defective product establishes the liability and the conduct of the plaintiff reduces the damages by the amount that such conduct contributed to the injury. It seems to be but a matter of semantics whether one speaks in terms of comparative negligence, comparative fault or comparative causation.

I will not in this dissent list the various jurisdictions that apply the principles referred to herein. They are referred to in the literature cited. The rule followed in most States is that of pure comparative fault or causation. Thus, *all* of plaintiff's conduct that contributes to his injury is considered against the total damages arising out of an injury involving a defective product. This policy has been established in some States by judicial decisions and in others by legislation. (See Woods, *Product Liability: Is Comparative Fault Winning The Day?*, 36 Ark. L. Rev. 360 (1982); Woods, *The Trend Toward Comparative Fault*, 20 Trial 16 (Nov. 1984).) Although several States have previously considered and applied comparative fault in product liability cases, the recent trendsetter seems to be *Daly v. General Motors Corp.* (1978), 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380. In that case, plaintiff's husband had been killed when his Opel automobile struck a guard rail on the highway and he was thrown from the car. The suit against General Motors was based on the allegation that the door latch on the car was defectively designed. The court held that comparative-fault principles could be applied in such a case to justify the admission of evidence of plaintiff's nonuse of safety devices such as seat belts and door locks.

In *Daly*, the court noted that a majority of scholarly commentators has urged the adoption of the comparative-fault rule which the court, in *Daly*, applied. Also, *Daly* noted that the Uniform Comparative Fault Act provides:

"Section 1. [Effect of Contributory Fault.]

(a) In an action based on fault to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's

contributory fault, but does not bar recovery ***.

(b) 'Fault' includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability." (20 Cal. 3d 725, 741, 575 P.2d 1162, 1171-72, 144 Cal. Rptr. 380, 389-90.)

The Uniform Comparative Fault Act was approved by the National Conference of Commissioners on Uniform State Laws in 1977. For the text of the Act see 12 Uniform Laws Annotated, Civil Procedural and Remedial Laws 1975, 1985 Cumulative Annotated pocket part.

Thus the Uniform Comparative Fault Act and the *Daly* holding and its progeny include all forms of fault on the part of the plaintiff and diminish his recovery whether or not the plaintiff's fault was a defense under the prior law to a strict products liability action. (See Wade, *Products Liability and Plaintiff's Fault—The Uniform Comparative Fault Act,* 29 Mercer L. Rev. 373, 374, 382 (1978).) In this article the author stated:

"Even though in many states a user's negligence in failing to discover a defective condition of a product does not bar or affect the amount of his recovery in a common law strict-liability action, this makes no difference. The Act applies the comparative fault rule, 'whether or not under prior law the claimant's contributory fault constitutes a defense or was disregarded under applicable legal doctrines ***.' " 29 Mercer L. Rev. 373, 382.

The commentators note that the distinctions that have in the past been drawn between the types of conduct of the plaintiff that constitute a complete defense in a strict product liability case (assumption of the risk) and other conduct that may not be a defense in such a case are distinctions that are difficult to define. Conduct which constituted assumption of the risk is in reality a form of contributory negligence, whereas failure to discover a defective condition, which section 402A, comment *n*, of the Restatement (Second) of Torts says is not

a defense, may not in fact be negligence. The advantage of the position taken by *Daly* and the uniform act and other cases following this rule is that there is no need to draw these difficult distinctions with resulting extensive litigation on the question. (See Wade, *Products Liability and Plaintiff's Fault—The Uniform Comparative Fault Act*, 29 Mercer L. Rev. 373, 382 nn. 34, 35 (1978); Schwartz, *Strict Liability and Comparative Negligence*, 42 Tenn. L. Rev. 171, 177-78 (1974).) For a current survey of the comparative-fault rule as applied in the various States, see Comment, *Comparative Negligence and Strict Products Liability: Where Do We Stand? Where Do We Go?*, 29 Villanova L. Rev. 695 (1984).

In *Coney*, this court did not adopt the complete comparative-fault rule of the uniform act or of the *Daly* decision. Instead, it excepted from recovery-reducing conduct "a consumer's unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect." (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 119.) This exception is a carryover from the Restatement's position as stated in section 402A, comment *n*, of the Restatement (Second) of Torts that such conduct should not be a defense in a strict products liability action and has been described by a commentator as "a rule in search of a rationale." (Schwartz, *Strict Liability and Comparative Negligence*, 42 Tenn. L. Rev. 171, 176.) The author of that article stated that such holdings are better explained on the ground that the plaintiff in such a case has not been negligent at all. The author also states that in a strict product liability case based on implied warranty there is some logic to the suggestion that the plaintiff has relied on the manufacturer to produce a product without defect and therefore his failure to discover the defect should not bar his claim.

In *Coney*, this court quoted the rationale of the Florida Supreme Court for the "failure to discover" excep-

tion to the comparative-fault rule that "[t]he consumer or user is entitled to believe that the product will do the job for which it was built." (*West v. Caterpillar Tractor Co.* (Fla. 1976), 336 So. 2d 80, 92, quoted in *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 119.) In *West*, the Florida court, while recognizing that failure by the consumer or the user to discover a defect is not a factor to be considered in reducing the amount of recovery, held that the defendant may assert that the plaintiff was negligent in some manner other than failure to discover or guard against the defect. The court stated:

> "The fact that plaintiff acts or fails to act as a reasonable prudent person, and such conduct proximately contributes to his injury, constitutes a valid defense. In other words, lack of ordinary due care could constitute a defense to strict tort liability." (*West v. Caterpillar Tractor Co.* (Fla. 1976), 336 So. 2d 80, 90.)

Thus the Florida court recognized that there is a broad area of plaintiff's possible negligence not encompassed within the "failure-to-discover or guard-against standard," and the "assumption-of-risk standard" alluded to in section 402A, comment *n*, of the Restatement (Second) of Torts. (See Woods, *The Trend Toward Comparative Fault*, 20 Trial 16, 18-19 (Nov. 1984).) This distinction has also been recognized by the Texas Supreme Court in *Duncan v. Cessna Aircraft Co.* (Tex. 1984), 665 S.W.2d 414. In that case, after adopting the broad concept of comparative fault (but electing to use the term comparative causation), the court excepted from the damage-reducing negligence of the plaintiff negligent failure to discover or guard against a product defect because this rule serves to protect consumers' reliance on product safety. (665 S.W.2d 414, 432.) The Texas court thus recognized that there is an area of plaintiff's contributory negligence not covered by "assumption of risk" or "failure to discover." (See Woods, *The Trend Toward*

*Comparative Fault*, 20 Trial 16, 20 (Nov. 1984).) It appears that West Virginia and Oregon are also States that apply the exception to the comparative-fault rule adopted in *Coney*. See Woods, *Product Liability: Is Comparative Fault Winning The Day?*, 36 Ark. L. Rev. 360, 369-70.

Thus Illinois, Florida, Texas, West Virginia and Oregon have not accepted the broad comparative-fault rule of the Uniform Comparative Fault Act, the California court in *Daly*, or the majority of the other jurisdictions that have considered the question. However, the holding that the failure to discover shall not be considered as comparative fault does not support the conclusion of the opinion in this case that only such conduct as would have previously been a defense and bar to a strict product liability action can be considered as comparative fault. Under *Duncan* and *West*, any conduct of plaintiff contributing to his injury that does not measure up to the reasonable-man standard, other than failure to discover, may be considered as comparative fault. In *Duncan v. Cessna Aircraft Co.* (Tex. 1984), 665 S.W.2d 414, it was charged that the airplane in which the plaintiff's decedent had been receiving instruction was operated at less than a safe flying speed. In *West v. Caterpillar Tractor Co.* (Fla. 1976), 336 So. 2d 80, a woman, while looking into her purse, walked into the path of a grader which was traveling in reverse without an operative warning signal. These two cases demonstrate areas of negligence by the plaintiff not encompassed within the types of contributory negligence referred to in comment *n* of section 402A of the Restatement (Second) of Torts.

The rule that all types of plaintiff's conduct may be considered as recovery reducing is the favored rule by a majority of jurisdictions and the commentators on the subject. The rationale for the adoption of such a rule is: "[B]ecause it is fair to do so." (*Daly v. General Motors*

(1978), 20 Cal. 3d 725, 742, 578 P.2d 1162, 1172, 144 Cal. Rptr. 380, 390.) It has also been stated:

> "A fundamental argument against this approach is that it might create poor risk distribution. The plaintiff may have to absorb a part of a loss that defendant might otherwise distribute on a wide scale. Obviously, when risks are distributed they increase the cost of the product or the activity. It is a question of policy whether the user of the service or the consumer of the product should bear the total cost of an accident which is due, in part, to plaintiff's fault. This writer believes that comparative negligence allows a just and simple way of placing a part of the cost where it belongs—on the individual plaintiff." (Schwartz, *Strict Liability and Comparative Negligence,* 42 Tenn. L. Rev. 171, 179 (1974).)

It has also been stated, "[E]ach defendant, as well as the plaintiff, will be legally responsible for that portion of the injury which he or she caused." (Comment, *Comparative Negligence And Strict Products Liability: Where Do We Stand? Where Do We Go?,* 29 Villanova L. Rev. 695, 724 (1984).) Another author has stated: "The attractiveness of comparative fault is its simplicity. It profits from the obvious drawback to comment (n) [of section 402A of the Restatement (Second) of Torts] that it is difficult to distinguish between 'failure to discover the defect or guard against the possibility of its existence' and 'lack of ordinary care'; between 'assumption of risk' and 'contributory negligence'; and between 'contributory negligence' and 'foreseeable or unforeseeable misuse.' " Woods, *The Trend Toward Comparative Fault,* 20 Trial 16, 21 (Nov. 1984).

In *Alvis v. Ribar* (1981), 85 Ill. 2d 1, we adopted the concept of pure comparative negligence. In that case we talked about the harshness of the contributory-negligence rule and the fairness of comparative negligence. We stated that by adopting the pure comparative-negligence rule, everyone would be compensated for the in-

juries attributable to another. We have enjoyed for but a few short years this concept of fairness. Now, we are already deviating. In this case and in *Clarkson v. Wright* (1985), 108 Ill. 2d 129, adopted this term, we are now permitting injured persons to recover damages for injuries caused in part by their own conduct. Soon the occasion for other deviations will be presented and the pure comparative-negligence doctrine may then accumulate so many exceptions that its fairness rationale will be severely eroded.

Pure comparative negligence or fault or causation (whichever name we choose to apply) has given us a wonderful opportunity to break from the artificial concepts and doctrines of the past. This is difficult to do because as we have become so accustomed to thinking in terms of contributory negligence and the many doctrines that evolved to avoid its harshness that it is difficult to view a case solely on the basis of pure comparative fault. However, we must remember that we are writing on a clean slate. We should therefore strive to apply to all actions arising under the common law the fairness doctrine of pure comparative fault so that each person stands responsible for the share of the injuries attributable to him. We no longer have to think in the nebulous terms of contributory negligence, assumption of risk, misuse of the product, failure to discover, mitigation of damages, avoidable consequences, and the like. I urge my colleagues to avoid the temptation to fashion exceptions to the doctrine of pure comparative fault in order to accommodate particular situations. If we succumb to this temptation, exceptions will soon swallow the rule, and the application of pure comparative-fault principles will become just as uncertain, just as unfair, just as artificial, and in some instances just as harsh, as was the old doctrine of contributory negligence.

Although I would prefer adopting the rule of the Uni-

form Comparative Fault Act and of *Daly*, I recognize that the law of this State is that announced in *Coney*, which eliminates from the Uniform Act and *Daly* rule the failure-to-discover type of contributory negligence. I cannot accept, however, the further erosion of pure comparative-fault or causation principles contained in the majority opinion in this case—that only conduct which would have barred recovery in a strict product liability case may be considered as comparative fault. Such a rule, in addition to ignoring the lack of ordinary care of a plaintiff, user or consumer, also appears to eliminate comparative fault altogether if the injured plaintiff is a bystander and possibly in so-called second-accident cases.

For the reasons stated herein, I dissent.

JUSTICE MILLER joins in this dissent.