Gary **FILIPPINI**, Plaintiff,

v.

**FORD MOTOR COMPANY, a foreign corporation registered to do business in the State of Illinois, Defendant.**

No. 85 C 6959.

United States District Court,
N.D. Illinois, E.D.

April 24, 1986.

A.C. Raccuglia & Assoc., Peru, Ill., for plaintiff.

James K. Toohey, David C. Bohrer, Ross & Hardies, Chicago, Ill., for defendant.

### MEMORANDUM AND ORDER

MORAN, District Judge.

Defendant properly removed this products liability action on the basis of diversity. The question now is whether plaintiff should be able to join the dealer who sold the product when neither the facts nor the parties' allegations indicate much likelihood that the dealer would be liable, the dealer is now out of business and joinder would destroy diversity. This court holds that the dealer should not be joined.

### FACTS

Plaintiff Gary Filippini claims that Ford Motor Co. is liable for the injuries he suffered when a front wheel separated from his employer's Ford pickup while he was driving it in accordance with his duties in and around Peru, Illinois. He brought an action in the Circuit Court of LaSalle County, Illinois, against Ford, claiming that (1) the truck was unreasonably dangerous at the time it was manufactured, assembled, or distributed; (2) Ford was guilty of carelessly and negligently designing, manufacturing or assembling the pickup truck, and failing to warn the plaintiff of the dangers; and (3) pursuant to Chapter 26, ¶ 2–314 of the Illinois Revised Statutes, Ford breached its implied warranty that the pickup truck was of good and merchantable quality. Ford, a Delaware corporation with its principal place of business in Michigan, properly removed the civil action to the U.S. District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a), by virtue of diversity of citizenship of the parties.

After removal, the plaintiff discovered the identity of the dealer who sold the Ford pickup truck to his employer. Filippini

now wants to assert his strict liability and implied warranty claims against the dealer as well. He therefore moves to amend his complaint to join Dennis Mahoney Ford, Inc. as a defendant. Filippini's employer apparently bought the truck in May 1983 at Dennis Mahoney Ford's going-out-of-business sale. In any case, the corporation has been dormant since the fall of 1983 and plaintiff admits that the current whereabouts of its officers are unknown. Filippini identifies Dennis Mahoney Ford in his proposed complaint as an Illinois corporation. Ford offers evidence that according to the Illinois Secretary of State Dennis Mahoney Ford was a foreign corporation which had its principal place of business in Spring Valley, Illinois. In either case, its citizenship for diversity purposes would be Illinois, the same as Filippini's.

## DISCUSSION

The joinder of the dealer, an Illinois citizen, would destroy the court's jurisdiction over this case and require that the court either dismiss, or remand the case back to the state court. If a court relies on diversity for jurisdiction over a particular claim or party the rule of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), applies. *Strawbridge* requires complete diversity, which means that the citizenship of all the plaintiffs must be diverse from the citizenship of all the defendants. This rule is also fully applicable to removal jurisdiction based upon diversity. *Jadair, Inc. v. Walt Keeler Co., Inc.*, 679 F.2d 131 (7th Cir.1982); 1A Moore's Federal Practice, ¶ 0.161 [1.–1] (1983). This court would therefore have no jurisdiction over the claim against Dennis Mahoney Ford. The case would then have to be either dismissed or remanded. *Render by Render v. Consolidated Rail Co.*, 585 F.Supp. 630 (N.D. Ill.1984); *Kaib v. Pennzoil Co.*, 545 F.Supp. 1267 (W.D.Pa.1982).

Once removal jurisdiction has properly attached, a plaintiff normally cannot defeat it by his own actions. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In *St. Paul Mercury*, the defendant had properly removed the case. The plaintiff then changed his allegations, which reduced the amount in controversy to a figure below the minimum for federal jurisdiction. The Supreme Court held that plaintiff's acts did not deprive the court of its jurisdiction. Otherwise, it said,

> the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice.... The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and the plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election.

303 U.S. at 294, 58 S.Ct. at 592. Ford, having complied with the terms of the removal statute, has a right to be here, and that right cannot be lightly disregarded.

The principle of *St. Paul Mercury* applies when a plaintiff in a removed case seeks to join a party whose presence would undermine federal jurisdiction. *Pacific Gas & Electric Co. v. Fibreboard Products*, 116 F.Supp. 377 (N.D.Cal.1953). In *Pacific Gas* plaintiff amended its complaint after removal, naming non-diverse joint tortfeasors, and filed a motion to remand. The court denied leave to amend. It found that "[i]f plaintiff were allowed to defeat federal jurisdiction by amending its complaint to add defendants as joint tortfeasors of Fibreboard, the latter's supposed statutory right of removal would be subject to the plaintiff's caprice in exactly the same sense as if plaintiff amended to reduce the amount prayed for as damages to less than $3,000.00." 116 F.Supp. at 381. Ford timely filed its petition for removal to protect its statutory interest in a federal forum. 28 U.S.C. § 1446(b). Diversity jurisdiction existed when Ford filed that petition. Ford is thus properly here, and has an interest in staying here. Filippini needs to show a strong argument in favor of joinder to overcome that interest. *See also* 1A Moore's Federal Practice, ¶ 0.161 [.1–3] (1983).

Many courts have found joinder of a non-diverse party justified if the party

would be deemed indispensable under Rule 19 of the Federal Rules of Civil Procedure. *See, e.g., Takeda v. Northwestern National Life Insurance Co.*, 765 F.2d 815, 819 (9th Cir.1985); *In Re Merrimack Mutual Fire Insurance Co.*, 587 F.2d 642, 647 (5th Cir.1978). In *Takeda*, an employee who had health insurance coverage through his employer sued the purported insurer for failure to pay his claims. The insurer responded that the employer in fact was self-insuring, and the employer was joined. The employer's presence destroyed diversity. The court found a significant possibility of prejudice to the employer if the suit proceeded without it, upheld the joinder, and ordered the case remanded to state court. 765 F.2d at 820–821. *See also Kaib*, 545 F.Supp. at 1269; *Swanigan v. Amadeo Rossi, S.A.*, 617 F.Supp. 66, 67 (E.D.Mich.1985); *Lamar Haddox Contractor, Inc. v. Potashnick*, 552 F.Supp. 11, 14 (M.D.La.1982) (all using Rule 19 indispensability standard).

■ Plaintiff here alleges that the dealer is indispensable by the terms of Rule 19. The rule requires a balance of four factors, of which three are particularly relevant to a removal case: the extent of prejudice to plaintiff, defendant and the absent party if the action proceeds without the absent party; the extent to which the court can take measures to reduce or eliminate such prejudice; and whether a judgment rendered without the absent party will be adequate. Fed.R.Civ.P. 19. The rule emphasizes practical consequences and its application depends on the particular facts and circumstances of each case. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968); *Takeda*, 765 F.2d at 819.

Considering those factors, this court is not persuaded that the dealer is indispensable. The plaintiff argues that he would be prejudiced by failure to join, in part because he would need to bring a separate action in state court to pursue his claim against the dealer. The difficulty with that argument is that under Illinois law of strict liability and warranty manufacturers have the primary liability for defective products, and a dealer is only liable if it can be proved that the dealer caused the defect. *See Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182 (1965) (where fault is only technical or passive, courts grant indemnity to the passive party and hold the active tortfeasor guilty). Illinois courts have held that one injured by a defective product can bring claims for strict liability in tort and breach of implied warranty against anyone who has contributed to placing that product in the stream of commerce. This includes the manufacturer, the seller and even lessors. *Suvada*, 32 Ill.2d 612, 210 N.E.2d 182; *Simpson v. General Motors Corp.*, 118 Ill.App.3d 479, 74 Ill.Dec. 107, 455 N.E.2d 137 (1st Dist. 1983). However, a manufacturer has a nondelegable duty to make a product that is reasonably safe; it may not delegate that duty to the dealer, user or purchaser of the product. *Id.*, 74 Ill.Dec. at 111, 455 N.E.2d at 141. This principle expressly applies to auto manufacturers. *Turney v. Ford Motor Co.*, 94 Ill.App.3d 678, 50 Ill. Dec. 85, 418 N.E.2d 1079 (1st Dist.1981) (Ford cannot delegate its duty to design its products without defects). If plaintiff can prove the claims he has alleged, they can be fully vindicated by the suit against Ford.

On similar facts, the Fifth Circuit held that a dealer was not an indispensable party within the meaning of rule 19. *Boone v. General Motors Acceptance Corporation*, 682 F.2d 552 (5th Cir.1982). In *Boone*, a diversity jurisdiction suit against the manufacturer (GM), the plaintiff had alleged design defects which rendered the vehicle unfit for its intended purpose. He did not sue the local dealer. GM moved to dismiss for failure to join the dealer, claiming that the dealer was an indispensable party. Joinder of the dealer would have destroyed the district court's diversity jurisdiction. The court refused to abandon jurisdiction when there was so little likelihood that the dealer would be held liable. The thrust of the plaintiff's complaint was concerned with design defects and "internal vices." He had not alleged that the dealer failed to repair or maintain the vehicle properly. *Id.*

Similarly, in this case, the thrust of the plaintiff's complaint against Ford is concerned with design and manufacturing defects. He does not allege that the dealer was negligent in the repair or maintenance of the truck, nor contributed to the defect.

In fact, if the plaintiff here had originally filed in state court solely against the dealer his complaint probably would have been dismissed as soon as the dealer had certified to the correct identity of the manufacturer of the defective product, under Ill. Rev.Stat., ch. 110, ¶ 2–621. Paragraph 2–621 requires that the court shall order the dismissal of a strict liability in tort claim against a dealer after the dealer has certified to the correct identity of the manufacturer, unless the plaintiff can show:

> (1) That the [dealer] has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; (2) That the [dealer] had actual knowledge of the defect in the product ... or (3) That the [dealer] created the defect.... This Section applies to all causes of action accruing on or after September 24, 1979.

Ill.Rev.Stat. ch. 110, ¶ 2–621. Here, the plaintiff does not allege that the dealer exercised significant control over the design or manufacture of the product, provided any instructions or warnings to Ford, had actual knowledge of, or created the defect. Instead, the plaintiff claims that the Ford pickup truck, at the time it left the possession of the dealer, was unreasonably dangerous because of the way it was designed and/or manufactured and distributed. Moreover, the plaintiff does not allege that the dealer was negligent (a claim that was charged against Ford).

The principle that ultimate responsibility rests with the automobile manufacturer and not the dealer has been codified in Ill.Rev.Stat. ch. 95½, ¶ 5–103:

> Delivery and preparation obligations of dealer—Specifications—Filing—Product and warranty liability—Self-insurance reserves—Rectification of defects. Every new vehicle manufacturer shall specify the delivery and preparation obligations of its vehicle dealers prior to delivery of new vehicles to retail buyers. A copy of the delivery and preparation obligations of its dealers shall be filed with the Secretary of State by every vehicle manufacturer and *shall constitute the vehicle dealer's only responsibility for product liability as between the dealer and the manufacturer.* Effective January 1, 1984.

(Emphasis added.) While the statute does not apply to the transaction here, which occurred in 1983, it further indicates the intent of the Illinois legislature that dealers should be ultimately liable only for their own negligence on defects that they caused.

Added to these legal problems with the claim is the practical problem that the corporation is out of business and the location of both it and anyone who might be liable in its stead are unknown. In short, the likelihood that plaintiff must and can look to the dealer for recovery is not of sufficient magnitude to override Ford's statutory right to this federal forum.

Plaintiff also asserts that the dealer must be present to head off a defense from Ford that it is not liable because the dealer caused the defect. There is no indication that Ford intends to pursue such a defense, nor is the separation of a wheel the kind of factual situation where such a defense is likely to prevail. In any case, the defense would have to be affirmatively proven. Alternatively, if the dealer could be located it could be subpoenaed as a witness to testify to these facts. This was the position the court took in *Boone,* 682 F.2d at 553, when the manufacturer claimed the dealer was an indispensable party. Louisiana law presumes that defects are known to the manufacturer, while one must prove that the defects were known to the dealer. A similar presumption appears to apply in Illinois. *See Johnson v. Amerco, Inc.,* 87 Ill.App.3d 827, 42 Ill.Dec. 684, 409 N.E.2d 299 (5th Dist.1980). On that ground the

dealer could be called as a witness by the plaintiff to testify as to how the dealer handles new vehicles. In sum, the likelihood of prejudice to Filippini from a failure to join the dealer is slight.

Similarly, there is little likelihood of prejudice to Ford. If Ford believes that the dealer somehow contributed to the defect, Ford could protect its interests by impleading the dealer as a third party defendant, an action which would not destroy diversity jurisdiction. Fed.R.Civ.P. 14; *Boone*, 682 F.2d at 553. The basic requirements for Ford to bring a third party claim against the dealer are that the dealer's liability to Ford must be secondary or dependent on the outcome of the main claim and Ford must be able to transfer all or part of its liability to the dealer. *U.S. General, Inc. v. City of Joliet*, 598 F.2d 1050, 1053 (7th Cir.1979); *Commodity Futures Trading Commission v. Hunt*, 591 F.2d 1211, 1224 (7th Cir.1979). It would seem that if the defect was in part the dealer's fault, Ford could meet these requirements and protect its interests through contribution. Such an action by Ford would not destroy this court's jurisdiction because complete diversity would be maintained between Ford (third party plaintiff) on the one hand and the dealer (third party defendant) on the other hand. However, Filippini could not then file a cross-claim against the dealer, because there would be no diversity between those two parties. *Owens Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

Nor is there any significant possibility of prejudice to the dealer, if that corporation still exists. *Lopez v. General Motors Corporation*, 697 F.2d 1328, 1332 (9th Cir. 1983). The court in *Lopez* found that a judgment on a strict liability claim between the plaintiff and the automobile manufacturer without joining the dealer would not, in either event, be *res judicata* between the plaintiff and the dealer, or between the dealer and the manufacturer. *Id.* The dealer, in this case, has not taken steps to intervene or claim any interest in the action. A final judgment in the dealer's absence would not prejudice any of the parties.

Adequate relief can also be fashioned in the dealer's absence. The *Boone* court held that complete relief to the plaintiff in that case was possible as long as the manufacturer was present. 682 F.2d at 553. We do not think that Filippini could seriously contend that he needs to join the dealer because Ford would be unable to pay the full amount of any judgment he might receive. Indeed, the dealer's resources to pay a judgment are probably quite thin given its current dormant status. The dealer is not needed for just adjudication under the standards of Rule 19. Joining him, and overriding Ford's interest in this forum as the removing party, cannot be justified for that reason.

Some courts have also allowed joinder of a non-diverse party after removal if the joinder relates back to the complaint before the action was removed. *Lopez*, 697 F.2d at 1332; *Render*, 585 F.Supp. at 631. For example, in *Heatherton v. Playboy, Inc.*, 60 F.R.D. 372 (C.D.Cal.1973), plaintiff had filed in state court against a magazine and its distributor for misappropriation of her likeness. The complaint named the magazine but, since she had been unable to learn the identity of the distributor, alleged a count against "John Doe" for "distributing" the magazine. The court allowed her to amend after removal since joining the distributor had clearly been contemplated from the outset, and remanded the case to state court. 60 F.R.D. at 376–377. Similarly, courts have allowed joinder after removal if the plaintiff only learned through discovery of facts which could make additional parties liable. In *Shaw v. Munford*, 526 F.Supp. 1209 (S.D.N.Y.1981), the plaintiff was ignorant of all the parties involved in the transmission of a letter when he filed his complaint, but through discovery learned the identity of defendant at issue. The court joined the non-diverse defendant. *Id.* at 1214. This was also the rationale of the courts in *Soam v. Trane Co.*, 506 F.Supp. 302 (S.D.N.Y.1980) (joinder of non-diverse party allowed when

plaintiff was unaware of all the facts at time suit was commenced), and *Harper Financial Corp. v. Hanson Oil Corp.*, 403 F.Supp. 1405 (W.D.Tenn.1975) (joinder of non-diverse defendants allowed when, utilizing discovery for one of its intended purposes, plaintiff learned that other additional parties might be liable).

Neither of these situations, however, is present in the instant case. The dealer's possible liability did not emerge from the facts as they were discovered. If the dealer is liable under strict liability or warranty, it is liable as a matter of law. Nor did Filippini list any counts directed at the dealer in his original complaint. A truck presumably had a dealer just as a magazine had a distributor, and a John Doe count could have been used until the dealer's identity was learned. Under ordinary circumstances, of course, an amendment would be allowed once the dealer's identity emerged, but these are not ordinary circumstances. An amendment here deprives Ford of the federal forum to which it has removed. Again, the balance of equities favors retaining federal jurisdiction. *Cf. Lopez*, 697 F.2d at 1331.

A few courts have also allowed joinder of non-diverse defendants after removal in the interests of judicial economy and convenience even though the party was not indispensable and the amendment did not relate back to the complaint. Such joinder has been permitted in particular factual circumstances where the party would at least have been eligible for permissive joinder under Rule 20 and joining him, even in the light of the loss of federal jurisdiction, "comports with the principles of fundamental fairness." *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir.1980). *See also McIntyre v. Codman & Shurtleff, Inc.*, 103 F.R.D. 619 (S.D.N.Y.1984), *Boyd v. Diebold, Inc.*, 97 F.R.D. 720 (E.D.Mich.1983).

A significant number of courts do not recognize such discretionary joinder. *See, e.g., Takeda*, 765 F.2d at 819; *Swanigan*, 617 F.Supp. at 67; *Lamar Haddox*, 552 F.Supp. at 14; *Kaib*, 545 F.Supp. at 1269.

The Seventh Circuit may be among them. In *Ryan v. State Board of Elections*, 661 F.2d 1130, 1134 (7th Cir 1981), the Seventh Circuit reversed a grant of remand, saying that "a federal court with jurisdiction over a removed case may not remand it on discretionary grounds." If the same principle applies to a plaintiff's request which would result in either dismissal or remand of a removed action, then joinder of a non-diverse party could only occur when the grounds were not discretionary, such as when the party is indispensable or when the amendment to join a party relates back to the original complaint under Fed.R. Civ.P. 15(c). *See Render*, 585 F.Supp. at 631; *In Re Merrimack Mut. Fire Insurance Co.*, 587 F.2d at 647.

Even if this court's discretion extends to join a non-diverse party beyond the limited circumstances of Rules 15 and 19, however, it should not extend to the instant case. It is true that the dealer could be joined under Rule 20. *See Intercon Research Associates v. Dresser Industries, Inc.*, 696 F.2d 53, 56 (7th Cir.1982). Plaintiff has asserted alternative rights to relief against Ford and the dealer arising out of Ford's and the dealer's participation in placing the motor vehicle in the stream of commerce. In addition, the claims of strict liability in tort and breach of implied warranty against both the defendants share a common thread of law and fact with respect to all the parties.

Any joinder, however, would also have to rest on the sound discretion of the court, which must determine if joinder "will comport with the principles of fundamental fairness." *Intercon*, 696 F.2d at 56, *citing Desert Empire*, 623 F.2d at 1375. In determining whether joinder will comport with the principles of fundamental fairness courts have considered equitable factors, such as: (1) the plaintiff's motives in amending his complaint to add a non-diverse party; (2) the delay of the movant in seeking to amend his pleadings; (3) the closeness of the relationship between the present parties and the parties to be joined; (4) whether the party to be joined has had

any notice of the pending action; (5) the degree of prejudice to the defendants were the joinder permitted and the case remanded to state court; (6) whether discovery has begun; and (7) the possibility of a multiplicity of lawsuits if parallel cases are allowed to proceed. *Id.; Shaw,* 526 F.Supp. at 1214.

■ It cannot be confidently asserted that plaintiff is motivated solely by a desire to remand the action to state court, although that could be so. *Cf. McIntyre,* 103 F.R.D. at 622; *Boyd,* 97 F.R.D. at 723. The plaintiff's claim against the dealer is at least not fraudulent. Joinder is not fraudulent unless it is clear that there can be no recovery under the law of the state on the cause alleged. *Bobby Jones Garden Apartments v. Suleski,* 391 F.2d 172 (5th Cir.1968). Plaintiff may have some possibility of a recovery against the dealer. The contractual relationship between Ford and the dealer makes the dealer a proper party to be joined for alternative relief arising out of the same transaction or occurrence.

There were also reasons which could explain the delay in discovering the dealer's identity. The plaintiff was not the purchaser of the truck, but rather an employee of the purchaser. It could be true that even in communities the size of Peru and Spring Valley that the identity of the dealer could not be determined until the complaint was filed and the plaintiff had power of discovery. There is evidence that Filippini was pursuing efforts to learn the identity of the dealer before the suit was removed. It was soon after discovery was commenced that the plaintiff, without delay, filed his amendment to join the dealer.

■ However, mere innocent motive is not enough. Ford would be prejudiced by the joinder of the dealer in that it would lose the federal forum which it now has. A court should look to the preservation rather than the destruction of jurisdiction when adjudicating controversies concerning the adding and dropping of parties. Fed.R. Civ.P. 21; 1A Moore's Federal Practice, ¶ 0.161[2] (1983). Rule 21, which deals with the adding or dropping of parties, indicates that the preservation of jurisdiction is the higher value here. Misjoinder of parties is not ground for dismissal of an action since the rule allows dropping a party or severing a claim. *See Render,* 585 F.Supp. at 631 (*citing* Rule 21 as a ground for not joining a non-diverse party). Professor Moore would allow that "in the exercise of sound discretion the district court may permit a new party to be added [to a removal action], although his citizenship destroys diversity and requires a remand." 1A Moore's Federal Practice, ¶ 0.161 [.1–3] (1983). However, Moore cautions that there must be "strong equities in favor of the amendment." *Id.*

■ Such equities are simply not present here. The dealer is not indispensable and his joinder could have been, but was not, contemplated in the original complaint. The cases which have approved such discretionary joinder to avoid the possibility of more than one lawsuit at least look for a high degree of involvement by the defendant in the series of occurrences which allegedly gave rise to plaintiff's cause of action. *Desert Empire,* 623 F.2d at 1376. For example, *Desert Empire* was a suit on an insurance contract in which the insured had relied on the representations of the insurer's agent. The insurer denied that there was any insurance contract at all, and so the insured sought to join the agent with counts of fraud or negligent misrepresentation. *Id.* at 1373–1374. The agent thus could well have been an indispensable party, but the court did not undertake a Rule 19 analysis. Similarly, in *McIntyre,* a plaintiff injured during a neurological procedure filed two companion suits in state court, one for medical malpractice against the hospital and physician performing the procedure and another against the manufacturer of the device used in the operation. The manufacturer removed its action and plaintiff sought to join the defendants in her other suit. The close relationship of all the parties to the facts strongly supported joinder. 13 F.R.D. at 620.

The facts of the instant case do not indicate any significant involvement of the dealer with the occurrences which gave rise to the cause of action. Indeed, the plaintiff does not allege any conduct whatever by the dealer which contributed to his injuries, and merely seeks to hold the dealer liable under strict liability or warranty.

In short, there is no strong reason to join the dealer and a good reason, namely Ford's interest in preserving the federal jurisdiction it acquired through removal, not to join. The dealer is not an indispensable party. Since ultimate liability rests with the manufacturer in strict product liability cases, it can be fairly concluded that in the absence of the dealer complete relief can be accorded here without prejudice to those already parties. The dealer was not joined at the outset and his liability was not a surprise which emerged from discovery. Joinder of the dealer solely on the grounds of judicial economy and convenience would seriously prejudice Ford's right to federal jurisdiction. Considering all factors, preservation of jurisdiction should prevail in this case.

## CONCLUSION

For the above reasons, plaintiff's motion to amend his complaint to join an additional defendant is denied.